UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN BARTHOLOMEW,<br><br>   Plaintiff,<br><br>  v.<br><br>S. MOSS, et al.,<br><br>   Defendants. | No. 2:17-cv-2551-KJM-EFB P<br><br>FINDINGS AND RECOMMENDATIONS |

Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983. Currently pending are the parties' cross-motions for summary judgment. ECF Nos. 31 & 33. For the reasons stated hereafter, it is recommended that defendants' motion be granted in part and plaintiff's be denied.

<u>Legal Standards</u>

  A. <u>Summary Judgment</u>

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford-El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994). At bottom, a summary judgment

1

motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See, e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323-24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates

that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." *Id.* at 323.

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id.* If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J.,

3

dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th Cir. 1995).  On the other hand, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted).  In that case, the court must grant summary judgment.

B.  Administrative Exhaustion

The Prison Litigation Reform Act of 1995 (hereafter "PLRA") states that "[n]o action shall be brought with respect to prison conditions under section 1983 . . . or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  The PLRA applies to all suits about prison life, *Porter v. Nussle*, 534 U.S. 516, 532 (2002), but a prisoner is only required to exhaust those remedies which are "available."  *See Booth v. Churner*, 532 U.S. 731, 736 (2001).  "To be available, a remedy must be available as a practical matter; it must be capable of use; at hand."  *Albino v. Baca*, 747 F.3d 1162, 1171 (9th Cir. 2014) (citing *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)) (internal quotations omitted).

Dismissal for failure to exhaust should generally be brought and determined by way of a motion for summary judgment under Rule 56 of the Federal Rules of Civil Procedure.  *Id.* at 1168.  Under this rubric, the defendant bears the burden of demonstrating that administrative remedies were available and that the plaintiff did not exhaust those remedies.  *Id.* at 1172.  If defendant carries this burden, then plaintiff must "come forward with evidence showing that there is something in his particular case that made the existing and generally available administrative remedies effectively unavailable to him."  *Id.*  If, however, "a failure to exhaust is clear on the face of the complaint, a defendant may move for dismissal under Rule 12(b)(6)."  *Id.* at 1166.

C.  First Amendment Retaliation Claims

To establish liability for violation of the First Amendment via retaliation, a prisoner must show five elements: "(1) An assertion that a state actor took some adverse action against an

4

inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005). "Because a prisoner's First Amendment rights are necessarily curtailed, however, a successful retaliation claim requires a finding that the prison authorities' retaliatory action did not advance legitimate goals of the correctional institution or was not tailored narrowly enough to achieve such goals." *Pratt v. Rowland*, 65 F.3d 802, 806 (9th Cir. 1995) (quoting *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985)) (internal quotation marks omitted).

                             Background

Plaintiff alleges that, on January 20, 2017 and while incarcerated at the California State Prison, Solano, he told defendant Moss that he had recently completed a substance abuse program and reminded her that she had promised to restore his California Prison Industry Authority ("CALPIA") full work hours after he had done so. ECF No. 1 at 4. Plaintiff then told Moss that he would send her a "Form 22" regarding the issue. *Id.* Moss allegedly responded by telling plaintiff, "if you file another Form 22 you won't have a job, I read your file, I know about your lawsuit." *Id.*

Undaunted, plaintiff submitted a Form 22 regarding reinstatement of his hours on January 27, 2017. *Id.* On January 31, 2017, defendant Martinez approached plaintiff in his cell and informed him that he was to gather his belongings and prepare to leave immediately. *Id.* Plaintiff asked why he was being directed to leave, and Martinez allegedly informed him that she had received a call from Moss indicating that plaintiff was being fired from his job and placed on "S" time. *Id.* Martinez allegedly asked plaintiff "did you file an appeal or something?" *Id.* Plaintiff responded in the affirmative and Martinez allegedly replied by saying "well to (sic) bad, don't report back to work unless I call for you." *Id.* Plaintiff claims that, on February 10, 2017, he asked defendant Martinez about returning to work during a follow up interview. *Id.* Martinez allegedly replied that Moss had grown tired of plaintiff "filing paperwork," and had indicated that she was going to use plaintiff's escape history to fire him unless he rescinded his grievance. *Id.*

/////

5

1    In her declaration, Moss states that she did not make a final determination as to whether
2 plaintiff should be allowed to continue his CALPIA employment. Rather, upon discovering his
3 escape history in an audit, she merely reported her findings to CALPIA and plaintiff's
4 correctional counselor along with a recommendation that he be unassigned. ECF No. 31-5 at 4,
5 ¶¶ 10-11. Moss states that she does not recall precisely when she discovered plaintiff's escape
6 history during her audit. *Id.* at 4, ¶ 10. She states, however, that plaintiff was temporarily
7 dismissed from his CALPIA position on January 31, 2017 and permanently dismissed from his
8 CALPIA position by a unit classification committee on February 23, 2017. *Id.* at 3, ¶ 8. Moss
9 states that she was not aware of plaintiff's grievances or any lawsuits he had filed at the time she
10 made her recommendation that he be removed from the position. *Id.* at 4, ¶ 11.

11    On February 11, 2017, plaintiff interviewed with a correctional officer named Hamblin
12 about obtaining a Level II visiting porter position. *Id.* at 6. Plaintiff was instructed to submit a
13 Form 22 to Hamblin regarding the position. *Id.* He did so and, on March 23, 2017, was assigned
14 the porter position. *Id.*

15    On April 5, 2017, plaintiff was awaiting an appointment in the Solano Central Health
16 Services building when he was approached by defendant Martinez. *Id.* Martinez asked what his
17 purpose in the building was. *Id.* Plaintiff replied that he was there to see an optometrist and
18 Martinez requested his identification and medical ducat. *Id.* Martinez then asked plaintiff where
19 he was now working, in light of his previous firing. *Id.* at 7. Plaintiff informed Martinez and the
20 latter radioed Moss to confirm plaintiff's new assignment. *Id.* Martinez noted that, in light of
21 plaintiff's grievance against Moss, she "would have fired him too." *Id.*

22    On April 7, 2017, plaintiff alleges that Moss effected his firing from the porter position
23 and re-assigned him to kitchen scullery duty. *Id.* Plaintiff maintains that Moss acted to retaliate
24 against him for filing grievances. *Id.*

Analysis

A.   Defendants' Motion for Summary Judgment

Defendants advance two arguments in support of summary judgment. First, they contend that plaintiff failed to exhaust his administrative remedies against defendant Martinez. Second,

6

1  they contend that the retaliation claims against them should be dismissed because: (1) there is no
2  evidence that their actions vis-a-vis plaintiff's jobs were undertaken in retaliation; and (2)
3  plaintiff's removal from those positions served legitimate correctional goals.

4              1.   Failure to Exhaust Administrative Remedies

5  Defendants contend that plaintiff exhausted two grievance appeals, numbered SOL-17-
6  00696 and SOL-17-00831, between January 20, 2017 (the date of the first incident) and
7  December 4, 2017 (the date this lawsuit was filed).  They contend that neither grievance
8  addressed plaintiff's claims against defendant Martinez.  The court has reviewed both grievances
9  and concludes they are correct.

10  Grievance SOL-17-00696, as defendants concede, clearly articulates his claims against
11  defendant Moss regarding his removal from his first job position.  ECF No. 31-6 at 27-36, 40-41.
12  There is no mention therein, however, of any wrongdoing by defendant Martinez.  Nor is there
13  any indication that prison officials considered Martinez's conduct in adjudicating this grievance.

14  Grievance SOL-17-00831 raised claims regarding plaintiff's dismissal from his visiting
15  porter job.  Once again, the grievance clearly articulates claims against defendant Moss, but
16  articulates no actual wrongdoing against Martinez.  *Id.* at 9-13.  The only mention of Martinez
17  occurs in a portion of the grievance, apparently crossed out by plaintiff himself, that requests that
18  she "reframe [sic] from slander."  *Id.* at 13.  The grievance responses provide no indication that
19  prison officials considered Martinez's conduct in administratively adjudicating plaintiff's claims.

20  In his opposition, plaintiff argues that SOL-17-00831 exhausted his claims against
21  Martinez insofar as he "accused unnamed staff of conspiring with Moss to have him removed
22  from his work assignment."  ECF No. 38 at 4.  Pursuant to the Prison Litigation Reform Act, a
23  grievance "suffices if it alerts the prison to the nature of the wrong for which redress is sought."
24  *Sapp v. Kimbrell*, 623 F.3d 813, 824 (9th Cir. 2010) (quoting *Griffin v. Arpaio*, 557 F.3d 1117,
25  1120 (9th Cir. 2009)).  The court concludes that SOL-17-00831 failed to provide administrative
26  reviewers with sufficient notice that plaintiff sought redress for any conduct perpetrated by
27  Martinez.  The vague allegation that unnumbered, unnamed staff conspired in unspecified ways
28  with Moss to remove plaintiff from his work assignment does not provide sufficient notice for

1 meaningful administrative review.  Plaintiff cites the Ninth Circuit's decision in *Reyes v. Smith*, where the court found that, even though the prisoner had failed to name two of the physicians on the prison's three-person pain committee, officials had sufficient notice of the nature of the wrong alleged in the suit.  810 F.3d 654, 658-59 (9th Cir. 2016).  This case is obviously unlike *Reyes*, however.  Here, plaintiff did not allege wrongdoing by a discrete committee whose membership would have been known (or, at the very least, easily ascertainable) to reviewing prison officials.  Moreover, in *Reyes*, the alleged wrongdoing – a simple denial of pain medication – applied equally to each member of the committee.  By contrast, the allegation that other staff conspired with Moss necessitates a fact intensive review.  Who was part of the conspiracy?  In what ways did each individual further it?  Did each have knowledge that they were furthering a retaliatory purpose?  *Reyes* does not stand, in the court's view, for the proposition that a non-specific allegation against "unnamed staff" is sufficient to exhaust against any individual a plaintiff later chooses to name in a lawsuit.

For the reasons stated *supra*, the court finds that plaintiff failed to exhaust his administrative remedies against defendant Martinez before filing this suit.

### 2. <u>Retaliatory Conduct by Defendant Moss</u>

The court finds it appropriate to grant defendant Moss summary judgment in part.  As noted *supra*, there are five elements of a First Amendment retaliation claim that a prisoner must establish: "(1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal."  *Rhodes*, 408 F.3d at 567-68.  Thus, to prevail, plaintiff must show that Moss's actions did not reasonably advance a legitimate correctional goal.  *See Pratt*, 65 F.3d at 806.  He must also show that the actions at issue were actually adverse.  *See Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012) ("Second, the plaintiff must claim the defendant took adverse action against the plaintiff.").  The court finds that, for the reasons stated hereafter, the record plainly demonstrates that plaintiff's re-assignment from the Level II visiting porter position to the scullery position was not adverse.  Thus, Moss is entitled to summary judgment on that claim.

With respect to plaintiff's removal from his CALPIA position, however, Moss's motion for summary judgment is problematic.

### a. CALPIA Position

There is evidence before the court of two alternative reasons for Moss' decision to terminate plaintiff's CALPIA position. As for the alternative Moss articulates, it is undisputed that plaintiff attempted an escape from Alameda County authorities[1] in 1985. ECF Nos. 31-3 at 2, ¶ 5; 39 at 1, ¶ 5. It is also undisputed that, prior to the events at issue in this case, plaintiff's prison file was marked with an "ESC" administrative determinate based on his previous escape history. ECF Nos. 31-3 at 2, ¶ 6; 39 at 1, ¶ 6. Defendants have provided an excerpt from California Department of Corrections and Rehabilitation Operations Manual.[2] ECF No. 31-9 at 6, Ex. A. That manual excerpt provides that "[i]nmates with a history of escape **shall be** excluded from assignment to CALPIA." *Id.* (bolded text in original). Thus, Moss urges the court to conclude that, with respect to plaintiff's termination from his CALPIA position, he cannot demonstrate that the action did not advance a legitimate correctional goal.[3] In his opposition, plaintiff maintains that there was "no written policy or regulation" excluding inmates with an escape history from CALPIA positions. ECF No. 38 at 5. But the operations manual which

/////

/////

---

[1] The parties appear to dispute only *which* Alameda County facility plaintiff attempted to escape from. Defendants maintain it was the Alameda County Jail; plaintiff states it was the Alameda County Courthouse.

[2] Defendants request that the court take judicial notice of the manual excerpt and an operations manual supplement. ECF No. 31-9 at 1. The court will do so. *See City of Sausalito v. O'Neill*, 386 F.3d 1186, 1224 n.2 (9th Cir. 2004) ("We may take judicial notice of a record of a state agency not subject to reasonable dispute.").

[3] The court notes that it is ill-suited to second guess the wisdom of the exclusion of inmates with an escape history from CALPIA positions. Precedent advises that courts should avoid "excessive judicial involvement in day-to-day prison management, which 'often squanders judicial resources with little offsetting benefit to anyone.'" *Pratt*, 65 F.3d at 807 (quoting *Sandin v. Conner*, 515 U.S. 472, 482 (1995)).

defendants have appended to their motion plainly provides that it is "[u]pdated through January 1, 2017." ECF No. 31-9 at 5. As noted above, the absence of a legitimate correctional goal is a required element of a successful inmate retaliation claim. *See Rhodes*, 408 F.3d at 567-68.

But there is also evidence that Moss' articulated reason is pretextual and not the true reason for the termination. Plaintiff recounts his conversations with both Moss and Martinez in which each made statements showing that retaliation for his First Amendment protected activity was the true reason for the termination of his job. The U.S. Court of Appeals for the Ninth Circuit has held that "'prison officials may not defeat a retaliation claim on summary judgment simply by articulating a general justification for a neutral process, when there is a genuine issue of material fact as to whether the action was taken in retaliation for the exercise of a constitutional right.'" *Shepard v. Quillen*, 840 F.3d 686, 692 (9th Cir. 2016) (quoting *Bruce v. Ylst*, 351 F.3d 1283, 1289 (9th Cir. 2003)). The court acknowledges that application of the foregoing principle presents a close call. Clearly, if Moss's account of events were credited, she would be entitled to summary judgment. More difficult is the question of whether summary judgment would still be appropriate if plaintiff's account of his termination were credited. In plaintiff's version of events, Moss knew about the regulation precluding his CALPIA employment but, rather than acting on it immediately and appropriately, chose to wield it as a cudgel to keep plaintiff from exercising his constitutional rights. Whether Moss did so is obviously disputed. The question then is whether the dispute is both genuine and material.

Plaintiff claims that Moss warned him that "if you file another Form 22 you won't have a job, I read your file, I know about your lawsuit." ECF No. 1 at 4. Plaintiff also claims that Martinez, who was acting on behalf of Moss in informing plaintiff of the termination, made a statement linking that job termination to plaintiff having filed a grievance. Plaintiff also claims that ten days later Martinez candidly told him that Moss had grown tired of plaintiff "filing paperwork," and had indicated that she was going to use plaintiff's escape history to fire him unless he rescinded his grievance. *Id.* If these allegations are taken as true, Moss warned plaintiff not to file another Form 22 or he would be terminated from his position and then fired plaintiff shortly after he filed the Form 22 anyway, an act that would clearly be in retaliation for

1   exercising a First Amendment right.  And if, as plaintiff claims, Martinez made the alleged
2   statements to plaintiff both at the time he was informed of the firing and ten days later, those
3   statements would corroborate that the true motive for the termination was plaintiff's exercise of
4   his right to pursue the grievance.  Both plaintiff and each defendant are percipient witnesses as to
5   what was said in the conversations. Whether plaintiff's or defendants' version of those
6   conversations should be credited is for a trier of fact to determine and the credibility of the
7   conflicting witnesses cannot be resolved on this motion.  Further, in resolving the dispute the trier
8   of fact may consider the proximity in time of plaintiff's protected activity (January 27, 2017) and
9   the termination (January 31, 2017).  Thus, there is a clear factual dispute as to whether Moss's
10  action was retaliatory.

11       As for the alternative explanation articulated by Moss, the fact that the ultimate outcome –
12  plaintiff's removal from the position – was supported by the regulation does not automatically
13  excuse the alleged retaliatory use of the same.  *See Bruce*, 351 F.3d at 1289 (holding that prison
14  officials cannot use valid procedures to obscure retaliatory actions, even if the ultimate result of
15  the procedure is the inmate "end[ing] up where he belonged.").  To hold otherwise would, in
16  many cases, afford virtual immunity to bad actors in the prison system.  An official could, so long
17  as the threatened retaliatory action were certain to be penologically justified, withhold immediate
18  use of some administrative mechanism in favor of leveraging it against inmates seeking to engage
19  in protected activity – as plaintiff alleges happened here.  To be clear, the court does not purport
20  to have any certainty that Moss is such a bad actor, or that plaintiff's account is the truer of the
21  two.  That determination is reserved to the ultimate finder of fact and inappropriate for resolution
22  on summary judgment.  Thus, the factual disputes regarding the reason for the termination are
23  both genuine and material and preclude summary judgment on the claim.

24       In terms of remedy, the court notes that plaintiff does not appear to seek reinstatement to
25  the CALPIA position – to which he would clearly not be entitled pursuant to prison regulations.
26  ECF No. 1 at 3 (requesting monetary damages).  Nevertheless, were he to prevail at trial, he
27  might be entitled to recover monetary damages in some amount for the violation of his First
28  Amendment rights.

11

1      The court recognizes that, in addition to arguing the existence of a valid penological

2 purpose, Moss also argues that other than plaintiff's conversation with her on January 20, 2017,

3 there is no other evidence that she acted in retaliation to his protected conduct.  ECF No. 31-2 at

4 19.  But, as noted *supra*, plaintiff also alleges that conversations he had with defendant Martinez

5 also informed his belief that Moss was acting against him out of retaliatory animus.  A reasonable

6 finder of fact, were it to credit plaintiff's account of events, could find sufficient evidence to hold

7 Moss liable for a violation of his First Amendment rights.

b. Level II Porter Position

9      With respect to plaintiff's Level II visiting porter position, it is undisputed that his

10 termination from that position coincided with his assignment to a position in the facility kitchen.

11 ECF No. 31-3 at 6, ¶ 34; ECF No. 39 at 3.  It is further undisputed that the kitchen position

12 belonged to the same "Work/Privilege Group" and had the same pay as the Level II visiting

13 porter position.  ECF No. 31-3 at 6, ¶ 35; ECF No. 39 at 3.  Thus, the court cannot conclude that

14 the reassignment was "adverse" in any meaningful way.  Nor can the court conclude that a lateral

15 reassignment – a transfer in jobs that did not result in a reduction in privileges or pay – would

16 chill a person of ordinary firmness from pursuing future First Amendment activities.  *See*

17 *Watison v. Carter*, 668 F.3d at 1114 ("[T]he plaintiff must allege that the official's acts would

18 chill or silence a person of ordinary firmness from future First Amendment activities.") (quoting

19 *Rhodes*, 408 F.3d at 568) (internal quotation marks omitted).

20      B.   Plaintiff's Motion for Summary Judgment

21      Plaintiff argues, not unexpectedly, that he is entitled to summary judgment because there

22 is evidence that defendants' actions were undertaken in retaliation for his filing of grievances.

23 ECF No. 33 at 12.  He outlines his claims, detailed *supra* in the background section of these

24 findings and recommendations, and cites to the law governing retaliation claims.  *Id.* at 11-14.

25 He has attached declarations from fellow prisoners in support of his account.  *Id.* at 16-18, 22, 27.

26 His motion fails to convince the court, however, that no reasonable jury could return a verdict for

27 the defendants.  *See Hauk v. JP Morgan Chase Bank United States*, 552 F.3d 1114, 1124 (9th Cir.

28 2009) ("A dispute is genuine if the evidence is such that a reasonable jury could return a verdict

for the nonmoving party.")  Defendants clearly dispute that their actions were retaliatory and based on the record (including sworn affidavits attached to their opposition – ECF Nos. 34-2 & 34-3), a reasonable jury could credit their account.  Thus, summary judgment in plaintiff's favor is inappropriate.

<u>Conclusion</u>

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Defendants' motion for summary judgment (ECF No. 31) be GRANTED in part as follows:

   a. The claims against defendant Martinez be DISMISSED for failure to exhaust administrative remedies;

   b. The claims regarding the termination from the visiting porter position be DISMISSED with respect to defendant Moss; and

   c. The motion be DENIED in all other respects.

2. Plaintiff's motion for summary judgment (ECF No. 33) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

Dated:  May 14, 2020.

EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE

13